2017-69 Daniel Ogden Kerber, et al. v. Wayne County Employees Retirement System, et al. Wayne County Airport Authority Oral argument is as follows, 15 minutes for the plaintiffs, Good morning, your honors. May it please the court, Robert Mullen on behalf of Daniel and Sheila Kerber, who are the appellants in this matter. The seminal issue of this appeal, your honor, is whether or not Judge Tarnow erred when he decided that Dan Kerber was only entitled to a Plan 5 retirement, as opposed to a Plan 1 retirement through his employer, Wayne County Airport Authority. And I want to mention to the court that I might reference Wickers, which would be considered the Wayne County Employment Retirement System. And Airport Authority, I'm referencing the Wayne County Airport Authority. It's so ingrained in my speech now over all these years of dealing with this case. I have a feeling that's how I'm going to reference it. So I'd appreciate if you'd take note of that. With that being said, we believe that the lower court erred when it determined that the measure of damages for Dan Kerber in this case was a Plan 5 retirement. And why do we believe that? It's because the paragraph 3 by Judge Tarnow was misconstrued. And he found that there was a condition precedent in that contract, which we don't believe exists. And judicial construction of a severance agreement was erroneous for numerous reasons. The first thing is we don't believe that Judge Tarnow applied a robust analysis of Michigan contract law as he was required. Michigan contract law was what he was required to look at through the paragraph 11 of the- Isn't anything all that unique about Michigan contract law, right? I'm sorry? Contract law, period. Isn't it pretty- what's so unique about Michigan? Well, the standards in Michigan is what I was pointing to that he didn't look to, which was we're a plain language state where when you're interpreting a contract, you look at the words and give them their normal usage. We don't believe that Judge Tarnow did that. Really? Okay, isn't that pretty standard everywhere? I would hope so, but I'll back off my statement. I don't know. I just thought, what's so unique about Michigan? But that's not terribly unique, is it? No, Your Honor. We believe that he didn't do a rigorous contract analysis. And in saying that, he was bound by some of the things that were put out by the Court of Appeals. In the criminal case, there was two criminal prosecutions. The Court of Appeals dealt with the exact issue that we're dealing with right now as to whether or not there was a condition precedent that Daniel Kerber had to do so, had to tender over, in order to get a Plan 1 retirement. And they reached the conclusion that it wasn't necessary. And why wasn't it necessary was because the type of language the drafters used, they used a permissive, agrees to allow him to transfer, as opposed to a mandatory language of must, will, or share. And they did so, we believe, intentionally. Agrees to allow him so long as he does his part. That was my understanding, generally speaking. So long as he forgoes the other part of the deal. He had to forego his pension or something. He had to pay back some money. The difference between the two plans, right? Yes. Did he do that? Well, Your Honor, there's some reasons why it didn't happen. And he attempted to do that. And that leads to the further arguments that even if you think there was a condition precedent based on the language of the contract, the problem is this, impossibility. A statement and testimony by the Wayne County Employment Retirement System representative who handled this investigation indicated it was impossible to take a defined contribution benefit and transfer it to a defined benefit plan. Unequivocally, she said that. So we believe that there was impossibility of making the transfer that was required by the agreement. In addition to that, the agreement had- This is simplistic. He was promised something that could not be done for him. That is correct. All right. And so who bears the burden? I mean, it was more favorable than he could possibly get. So what- Wickers would bear the burden because they had a fiduciary duty to do two things, to implement the contract and to cost out the contract. And Wickers did not carry out their fiduciary duty in doing that. In addition to that, there's other problems. And the other problems are waiver. For six years, they paid him a plan one retirement and never requested any of that defined contribution money and never sent any notices that he owed it or anything along those lines. In addition to that, they never once allowed him, when he attempted to pay the money to them and was speaking with them, they wouldn't accept it. They further did not provide a vehicle for him to transfer the money over to them as through rollover, paperwork, documentations. In addition- I gather when they- I don't know the back and forth, but I gather they didn't accept it because they said this cannot be done. That's why they wouldn't accept it. They wanted to forestall the eventuality that he was trying to work, thanks to the promise that could not be kept. That could have been- well, they didn't admit that, but that could have been that. But even in additional, Your Honor, 14 or 15 months after he retired, the account gets closed. Wickers has the money. They have access to it. In fact, he cannot receive this money unless that transfer is blessed by Wickers. They give him the money back. They give him the money back and, again, don't say anything for four years. And again, I think that that's a waiver of a condition precedent if there was one, because it would be reasonable to believe that if they had an access to the money and they gave it back to him. And they never sent him a notice of time, place, manner, and amount for him to pay in this, or as I indicated, gave him a vehicle. Go ahead. No, you go. Okay, well, I wanted to ask you, Mr. Kerber seems to be arguing that the district court was bound to follow the state appellate court's conclusions. So are you arguing that even though that wasn't a published opinion, that it created a binding result? So you're arguing issue preclusion, or what exactly are you arguing? I wouldn't believe that it would be issue preclusion, Your Honor. I believe the court of appeals decision was thorough and instructive for Judge Tarnow. Could I say that that would bind his hands and that would be the only thing that he could do, is look at the Michigan opinion? No, I don't think that he would be bound that way. But I think it's powerful evidence of what the intention would be under Michigan law and under a contract analysis dealing with that. And further, the ideal that they had the authority to do this is really an issue. And because, first off, back on the condition precedent argument, Wickers actively obstructed the performance of the condition and therefore can't rely on it to avoid liability. But I'm curious how the law now, how Wickers, who is not even mentioned, let alone a party to the contract, has the power to amend an agreement between an employer and an employee when they're only a third party administrator of the agreement. And furthermore, it's a problem because under paragraph 11, it indicates the only way to amend this contract is in writing between the employer and the employee. And that didn't happen here. Wickers did it unilaterally. And I don't think they can cite any authority, constitutionally, statutorily, or in case law that would support what they did. In addition to that, they had a fiduciary duty. And even under, if we're looking at that contract and we're going to hold Dan Kerber to it, you have to look at the whole contract. There was methods for amending that contract to obtain the intent of the parties. And that's what the obligation was. As a fiduciary to Dan Kerber, Wickers had an obligation to try to find what the intent of the parties were and make it happen. And if it was impossible to transfer the plan one, the plan five money to plan one, there's ways to amend that contract in order to facilitate that. No effort was made by Wickers to do that. In fact, the only effort they made is once they discovered what they perceived as a mistake, they were going to prosecute him. And they cut off his benefit unilaterally, without any hearing, without any notice, a retiree, his sole source of income after 32 and a half years of employment for the county. And I think that leads me into my argument of punitive damages. The actions of Wickers, I believe, rise to the level and are ripe for punitive damages. The facts of this case clearly show that Wickers' actions were reckless, careless disregard for the plaintiff's rights, and an intentional disregard for a federal law. And why do I say that? Is because throughout this case, they never made an effort to hear Dan Kerber's side of the story. And when they were confronted why, why didn't you just talk to Mr. Kerber and resolve this like you've done with so many other retirees? The answer was, we're under a gag order. The prosecutor said we couldn't say anything. And Judge Tarnow dealt with that. He had indicated that, hey, you cannot abandon your responsibilities in the law because you perceive that somehow the prosecutor has authority over you. They were an independent entity, and they had an obligation and duty to fulfill their fiduciary duties to Dan Kerber. In addition to that, they have what they allege is a post hearing on this, post due process hearing, which again, Judge Tarnow, for the reasons that are cited in the brief in his opinion, found it was inadequate. I mean, one thing I want to leave you on that, because I'm running out of time, is they used his employment file as part of their decision making in that post hearing. An employment file they twice denied Dan Kerber access to, even though it contained the information and the substance of the issues that they were bringing both in criminal and deprivation of his pension. And I'll reserve the final five minutes for rebuttal. Thank you. All right, Mr. Abb. Thank you, Your Honors. May it please the court, Robert Abb, representing Appellees, the Wayne County Employees Retirement System, and its Executive Director, Robert Gurdon. Your Honors, very clearly, you're well versed in this case, as all the cases I've sat through this morning. So I will not recite my brief. I just want to hit on a few points in response to some of the appellant's arguments today. First, and Your Honor did discuss this already, the severance agreement signed by Mr. Kerber, as the court opined on, as the district court opined on three times, is clear on its face. It says that he was given, the employee was allowed to transfer his plan five, defined contribution pension assets to plan one and elect plan one as his retirement plan. And I think there's some confusion about this. Well, the criminal case said something. Well, in the criminal case, the court said, well, yeah, it wasn't required that he transfer the money and retire from plan one. And that's true, Your Honor. He wasn't required to. He was given this golden parachute to double his pension for the rest of his life, if he just turned over the money in his defined contribution account. Anyone would take that plan. But once he decided to do it and retire from plan one, double his pension, then he was required, per the terms of the severance agreement, to turn over those defined contribution assets. But once he made the election or the decision, he really had no more role in executing that, right? I mean, somebody, the Wickers people had the obligation to process and apply and move funds, didn't they? So whose mistake was it really? It's a very good question, Your Honor. And one that we've certainly talked about a lot at the lower court. I think part of the problem here, and you're right, Your Honor, it should have happened. And part of the problem is that very few people knew about it. And I think that's really interesting. The severance agreement never went to the Retirement Commission, the board that oversees it, for approval. They had no idea that it existed. Additionally, it was interesting in the severance agreement. Would they have? Had they known? Is this something that they could have sanctioned? Yes, Your Honor. They would have. I got the impression that it was just verboten and nobody could ever do this. And it was not only off the record, it was not permitted. I apologize, Your Honor. With other severance agreements, if they had been aware, they could facilitate it. However, this severance agreement, for the reasons stated by Judge Tarnow on the record, was impossible. And part of those reasons, there are a few ones, and counsel mentioned, there was no cost study, which is required under- Was impossible or possible? It was contrary to law. Could the money have been transferred? It could have, Your Honor. And in fact, Mr. Kerber had transferred money before. He went from Plan 1 to 4, which is defined as- Who was breaking the law in agreeing to this? Your Honor, I believe the contract was illegal that was signed between Mr. Kerber and the- Illegal contract. Yes, Your Honor. He signed it. They signed it. Yes, Your Honor. And your client was the one in the position to know it was illegal, presumably. Well, Your Honor, my client had no- My client, the Retirement Board Commission, had no knowledge of it. And part of the reason- And the Airport Authority Board, I want to- His employer didn't know about it either. And I think it's interesting, the severance agreement- Who entered into this contract with him? Somebody who didn't have any authority to do so? Your Honor, it was the- Who didn't have the authority to bind either of these entities? Yes, Your Honor. It's very interesting. The severance agreement was written to give him also a $49,000 severance payment, which I thought was interesting. Why not round it up to $50,000? A $50,000 payment would trigger Wayne County Airport Authority Board approval. However, it was the CEO of the Airport Authority who entered into this contract, and the Airport Authority Board never saw it. The Retirement System Board never saw it. Was there a kickback here? Your Honor, if it looks funny to you- It smells like it, doesn't it? Yeah. It looks funny to- That's why it was reported to the prosecutor's office, and that's why the prosecutor brought charges. I believe that it looks funny to me. Somebody was trying to give somebody else a windfall that was not permitted. I mean, goodness. Yeah. I couldn't say it better myself, Your Honor. The other issue is that to offer this kind of pension enhancement to a non-represented appointee that he was the chief operating officer at the Airport Authority, to offer that, a public employer has to first offer it to a union group. That's an MCL 4612A requirement, which this was never offered. No one else has ever been able to go from five to one. So under the law, again, and this is an issue that the retirement system has dealt with before. If it's not offered to one of the union groups, and this is to prevent this type of golden parachute to executives without it going to the union and being publicized. So for those reasons, Your Honor, and that's part of the reason why, as Appellant Counsel mentioned, why didn't we meet with them? Why didn't the system try to make it right? Those are part of the reasons is that this contract, not only did he take the money out, which that was an affirmative action he did, but he also, the contract, it could not be completed for the reasons stated. Had there been a pre-deprivation hearing, would that have made any difference under the facts of this case? I know that's one of the complaints. I didn't get it. Would that have made any difference? Absolutely not, Your Honor. And I think Judge Tyrone did a good job covering that. That's the analysis under the Kerry v. FIFAS Supreme Court case. Exactly. It would not have made any difference. If they had looked at it in July of 2015, if they looked at it in October 2018, if they looked at it today, the language in the severance agreement would be the same. The state law at issue would be the same. The outcome would be the same. And I think that was aptly noted. You also argue that we should defer to the agency decision here, but there is no agency record. You've already mentioned the sort of unusual circumstances surrounding this whole process. So what deference is it that you argue we ought to be giving and to whom? And what would be the basis for that? Thank you, Your Honor. It's a great question. So for one, the Retirement Commission is a quasi-judicial body under Michigan law is entitled to, as long as their decisions are based on material, substantial, competent evidence and not clearly contrary to law, they should be upheld. The Retirement Commission did look at this after the criminal case concluded. They looked at this. They reviewed hundreds of pages of documents that were submitted by the plaintiffs, by Mr. Kerber, and they reviewed the record. They reviewed legal opinions. All of that was included in the record at the motion for summary judgment stage, and that is the decision that he was not entitled to the Plan 1 benefit that he should be in Plan 5 and the repayment plan. Those were all decisions made by the Retirement Commission that I believe afforded the deference that were based on material, substantial evidence and upheld by the Federal District Court. I think we've covered the severance agreement. We've covered the Kerry case a little bit. The one other point I wanted to discuss was the governmental immunity for Director Robert Gurdon, and I believe that decision was correct as well. I think we can see under the statute and the case law, there's really a three-part test, Your Honor, and really it's did he act within the scope of his employment or reasonably believe he was? Was it did he take some discretionary actions, and were those actions malicious or in bad faith? And here, Your Honor, everything he did, I don't think there's any dispute, was certainly at least reasonably within the scope of his employment. I would argue very clearly within the scope of his employment. Secondly, Your Honor, he did take some discretionary acts. When he was given a tip from someone at the airport authority that, hey, Mr. Kerber may not have paid that money over, he could have ignored it. That's possible, but he didn't because he's a thoughtful steward of the system, and he directed staff to look into this, go find out, was that money paid? So he took a discretionary action, and there's been no evidence at all in the record, in the complaint, nothing alleged that could even come close to bad faith or malicious here. This was simply the director of the retirement system relying on the advice of counsel, relying on the records and things that he chose. There's no evidence that even comes close to what could be thought of as with malice or bad faith that could give rise to the punitive, and the district court, I think, did an excellent job explaining that. Includes my prepared remarks, but unless there's any other questions, I will take a seat. We'll hear from Mr. Krapko. Thank you, Your Honors. Good morning, Your Honors, and may it please the court, Jeffrey Krapko on behalf of Appalee-Wayne County Airport Authority. Your Honors, Wayne County Airport Authority was more or less added as an afterthought to this suit, and I think that the arguments today bear that out a bit. There was only one claim ever alleged against the airport authority, and that was for tortious interference with a contract, but as Judge Tarnow concluded, and correctly so, there was no plausible right to relief because the complaint just simply did not pass muster. In order to allege tortious interference with a contract, there needs to be allegations of specific affirmative acts, and those specific affirmative acts, furthermore, have to either be illegal per se, or have malice and specific kind of fleshing out of what that malice looks like, and why it was undertaken with malice. None of that is in Mr. Kerber's complaint, which is why Judge Tarnow concluded that there was no plausible entitlement to relief. Secondarily to that, as the case evolved in briefing, Mr. Kerber began suggesting, well, perhaps there's an agency theory here. Well, again, you will search the complaint in vain because you will find no agency alleged. In fact, to the contrary, the complaint correctly alleges that Wickers is a quasi-judicial body, that it's independent, that it makes these decisions unilaterally and in its own consideration, and that is, in fact, the case. The airport authority has no ability to direct Wickers what to do with pensions, individual pensions, or this, that, or the other. So there is no agency relationship. But even putting all of that to one side, his claim still fails because of governmental immunity, and that's really probably the simplest way to resolve this section of the case. The airport authority is entitled to governmental immunity under Michigan law. It's a political subdivision. It's a transportation authority. It was engaged in employment activities, which is obviously related to its official function, and it's a broad grant of immunity per the Michigan Supreme Court. So it should, even if he were to go back and try and amend his complaint, it still fails there, and I would note as well that the Michigan Supreme Court has made it clear that if you're going to sue a governmental entity like the airport authority, you need to specifically plead how you're getting around governmental immunity. The complaint doesn't do that either. One final point, Your Honors, unless you have any other questions. There's been a suggestion that new facts have come to light that justify plaintiff's claim against the airport authority, but nothing was ever done with those facts, even accepting that they do justify a claim. Mr. Kerber never sought leave to amend his claims against the airport authority at the dismissal stage, and then even once discovery closed a year later, he sought leave to amend, but it wasn't against the airport authority. It was to add a First Amendment claim against Wickers. That was denied, and he never actually asked to do anything else with the airport authority. He can't now come to the Sixth Circuit and say, well, I should be able to go back and start over and amend my pleadings, even though I never asked for that relief. Your Honors, if there's any questions from the panel, I don't mean to belabor my points. I think we have none. Thank you, Your Honors. I will rest then. Thank you. Mr. Mellon? Yes. In rebuttal, Your Honor. First and foremost, I want to put forth, there was testimony in the preliminary exam transcripts that were also attached to the pleadings in this particular court where Gail LaRoche testified that Lester Robinson, the CEO of airport authority, had the authority to make that contract, and there was nothing illegal or nefarious about the agreement. Furthermore, Kelly Tapper also testified that through all her investigations, as she was the lead investigator for Wickers, that she didn't find anything that showed there was a conspiracy from Dan Kerber, with anyone from airport authority or Wickers, to cheat or defraud the system. Furthermore, Your Honor, there were 13 charges and two separate prosecutions in both of those cases. They couldn't even muster up probable cause of some illegal or criminal act from Mr. Kerber. So I think all the statements that they're making are just fluff. There was nothing illegal about this. And finally, regarding his benefit that he received, it being so great, and it being different, his benefit was calculated under 14110 of the Wayne County Retirement Ordinances. It used the same formula to determine his benefit as they would use for any other person that was put into a Plan 1 retirement. He was receiving, though, $11,000-something in benefits per month, as opposed to $6,000 per month. It doesn't matter how it was calculated. It was obviously to his benefit to be receiving the benefits he was receiving under the agreement, but he didn't perform the transfer of the funds. I mean, that's unrefuted, correct? It is. And I've gave reasons on the record of why that didn't happen. And furthermore, in addition to what I said about there's nothing illegal about this agreement, and it was right out in front, I take, I think it, you know, look... Are you using illegal in the criminal sense, or are you using illegal in terms of in compliance with the requirements of the retirement system? Both. And the reason I say that is because the deficits that occurred in this case were not the fault of Mr. Kerber, and he was not the one that could have facilitated that transfer. They had a fiduciary duty to do it. Well, the point I'm making is this agreement was not executed in accordance with normal policy, correct? I don't believe so, Your Honor. I mean, the CEO had... So you don't think the retirement board was required to approve it, or that anyone other than the CEO was required to know? Well, I think that he had absolute power, Lester Robinson. That was the testimony that we received in the preliminary exam. He had absolute power to make these agreements. That was part of his contract with airport authority at the time, that he had the right to make these agreements with executives. But even more importantly, they talk about the agreement. They didn't have a possession of that agreement. That's contrary to the testimony of two of their employees. Felicia Hollis indicated that she had, in 2009, access to that agreement. The Wayne County Wickers approved Dan Kerber for a Plan 1 retirement under that. In addition, Kelly Tapper, when she did her investigation, found a copy of that agreement in the file. And if we were to take their position, they didn't have this agreement. What does that tell you how they run Wickers? Because they had a fiduciary duty to implement that agreement, its terms and conditions, and to cost it out. How could they do that? They gave them a final benefit statement. How could they do that if they didn't have that contract? And again, the problem is there were mistakes made on their end. They took no responsibility for them. And one other thing that I want to tell you is now they didn't take responsibility when questioned whether or not they looked at their own organization as to whether or not what happened with Mr. Kerber's file. They never investigated why they didn't collect the money, why they paid him for six years and never sent him a notice that he owed the money. They never investigated why a letter wasn't sent to him indicating the time, place, manner, and amount that he was to pay and how to do that, which were all their fiduciary duties to Dan Kerber as a third-party administrator of his retirement. And to sit here and say, well, we didn't have the agreement and we didn't know, I think that that doesn't pass muster. It's disingenuous, considering what the obligations, duties, and the fiduciary duties they had, as well as the statements of their own employees. It isn't exactly GM, though. I mean, it's a little municipal or county agency. With all due respect, Your Honor, Wayne County is not a small county. I know it's not small, but as I say, it's not a huge corporation or something that should be run, expected to run, quite differently. I just take issue with the idea. There could be a lot of poor management at a little agency. It looks like there might be here. I would agree, but I don't think my client should suffer the consequences for their poor management. I know. I'm not sure. I'm not clear what his consequences are. Well, the consequences were he wasn't given the benefit of his contract that he had with airport authority. Okay. Never mind. He didn't carry out his part of the contract either. Your Honor, I understand what you said, but I put the reasons why it wasn't carried out. He could not facilitate that transfer on his own. That wasn't something he could do, and he's being punished for not doing it. He withdrew the funds, so then it became he took advantage, it seems to me, of the situation. He realized he was going to get paid at the higher level without moving the funds, and so he decided to do what he could do, withdraw the funds. Now, you know, he may... He can't repay it with funds that are gone. Well, what I'm trying to say is he attempted to repay it. They refused to take the money. In addition to that, Your Honor, he closed his account. They had access to that money. They had the money that they claimed they're entitled to and gave it back to him. How would he know that he wasn't entitled to that? In his previous, and it's in the record... He contracted to move it. Pardon me? He had contracted to move it. He didn't go to them and say, can you please add this to the other retirement fund? Look, I think we've probably covered all this, and your time's up. I appreciate it, Your Honor. I do appreciate your patience with the questions you asked. Thank you for your argument. We'll consider the case carefully. Thank you, Your Honor. You too. One more.